OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Edward L. Grennan, appeals from a final judgment of the Probate Division of the Ashtabula County Court of Common Pleas denying admission to probate a purported codicil to the last will and testament of Alexander L. Grennan ("Grennan").
The following facts are relevant to this appeal. Grennan died in his home on September 12, 1998 after an illness. On November 6, 1998, appellee, Dorothea L. Grennan, filed an application to probate Grennan's will, which had been executed on June 2, 1967.[1]
In accordance with the terms of the will, appellee was appointed executrix of the estate. On February 9, 1999, appellant, Grennan's son, filed a claim against the estate. In his claim, appellant made several requests with respect to the disposition of Grennan's property. In support, appellant attached a copy of an agreement allegedly signed by Grennan on May 30, 1997. On April 23, 1999, appellee denied the claim.
Thereafter, appellant filed an application to admit the May 30, 1997 agreement as a later codicil to Grennan's will. The probate court conducted a hearing on the application on July 16, 1999. At this hearing, appellant testified that he and his father had had an informal understanding concerning the work appellant would perform at Grennan's mobile home park. However, appellant eventually suggested that Grennan put the understanding in writing so that it would be legally enforceable. According to appellant, his father agreed with the suggestion and completed a handwritten draft which was then typed by appellant's wife. He and Grennan then drove to the Andover Bank to get the agreement witnessed and notarized. Appellant testified that he made copies of the agreement for him to keep and gave the original to his father to put in his personal files at home.
Appellant related that through the years he had occasionally seen the agreement in Grennan's files. In fact, appellant testified he last saw the agreement approximately sixty days before his father's death. Appellant claimed that Grennan's intent in creating the agreement was to maintain their relationship with respect to the mobile home park in the event of his father's death. Moreover, appellant testified that prior to his passing, Grennan never indicated that he wished to revoke or otherwise invalidate the agreement. Appellant submitted to the probate court a copy of the agreement that allegedly bore Grennan's signature, along with the handwritten copy.
Appellee was the only other witness to testify at the hearing. During her testimony, appellee stated that she was aware of an agreement between her husband and appellant concerning the mobile home park. However, appellee testified that she had never seen a physical copy of the agreement and had never discussed it with Grennan. As a matter of fact, when she was shown the handwritten copy, appellee disputed that it was entirely written in Grennan's handwriting.
Appellee also advised the court that when she was asked by appellant to find the original, she went through her husband's papers but could not locate it. Moreover, appellee maintained that prior to the time she told appellant to stay away from the mobile home park, he had complete access to the files.
On March 20, 2000, the probate court issued a decision denying admission of the agreement to probate as a codicil. In doing so, the court determined that the May 30, 1997 agreement made no testamentary disposition of property because there was no indication that Grennan "intended to or actually made a bequest of property, real or personal, to anyone." Accordingly, the probate court concluded that the agreement did not constitute a codicil under Ohio law.
The court also found that the agreement presented at the hearing was actually a copy of the original. After recognizing that when the original cannot be located there is a presumption that the decedent revoked it, the probate court found that while there was a "dirth (sic) of testimony * * * offered * * * on the location of the original document[,]" appellant had not established by clear and convincing evidence that the original agreement was lost, spoliated, or destroyed after Grennan's death or before Grennan's death, but without his knowledge.
From this judgment entry, appellant filed a timely notice of appeal. He now presents the following assignment of error for our consideration:
 "The trial court erred, to the prejudice of the Appellant, Edward Grennan, in refusing to admit to probate a copy of the codicil of Alexander Grennan, executed on May 30, 1997."
 Under his sole assignment of error, appellant presents two related issues. First, appellant argues that the probate court's finding that the agreement did not make a testamentary disposition of property is against the manifest weight of the evidence. Second, appellant claims that the probate court abused its discretion when it refused to admit a copy of the agreement to probate because he presented clear and convincing evidence to overcome the presumption that Grennan had revoked the agreement.
For ease of discussion, we will consider appellant's second argument first. In Ohio, "where a will is left in the custody of a testator and cannot be found after his death a presumption arises that he destroyed the will with an intent to revoke it." In re Estate of Haynes (1986),25 Ohio St.3d 101, 104. While this presumption is not conclusive, the burden of proving that the testator did not revoke his or her will is a heavy one. However, it may be overcome by the following:
 "* * * proof of declarations made by the decedent, by proof of circumstances surrounding the condition of the testator or of the testator's relations to the persons involved, or by testimony that a third party fraudulently destroyed the will." Haynes at 104.
 R.C. 2107.26 governs the procedure for the admission of a lost, spoliated, or destroyed will.[2] It provides that:
 "When an original will is lost, spoliated, or destroyed before or after the death of a testator, the probate court shall admit the lost, spoliated, or destroyed will to probate if both of the following apply:
 "(A) The proponent of the will establishes by clear and convincing evidence both of the following:
 "(1) The will was executed with the formalities required at the time of execution by the jurisdiction in which it was executed.
"(2) The contents of the will.
 "(B) No person opposing the admission of the will to probate establishes by a preponderance of the evidence that the testator had revoked the will."
 When making this determination, the Supreme Court in Haynes observed that "[t]he role of the probate court is to review all facts and circumstances surrounding the condition of the testator, the execution of the will and, if the proceeding is to admit a lost, spoliated, or destroyed will, the explanation of the missing, spoliated, or destroyed will so that the court may act from all testimony that may be offered." Id. at 104. However, a lost, spoliated, or destroyed will can be admitted under R.C. 2107.26 only if there is clear and convincing evidence that the "loss, spoliation, or destruction of the original will occurred subsequent to the death of the testator or before the death of the testator, but without his knowledge." Haynes at syllabus. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." Id. at 104.
Turning to the case at bar, we conclude that the presumption, which is applicable here because the agreement in question was in Grennan's possession at the time of his death and could not be found afterwards, has not been rebutted. In refusing to admit the agreement to probate, the court found that appellant did not meet his burden of proof. After conducting an exhaustive review of the record before us, we agree.
R.C. 2107.26 is intended to limit the circumstances under which a lost will can be probated. Sheridan v. Harbison (1995), 101 Ohio App.3d 206,209. Thus, while there is some evidence in the record to possibly support appellant's application, the evidence does not rise to such a level whereby this court can conclude that appellant has met his burden of proof by clear and convincing evidence.
Furthermore, even though it appears from the face of the document that the agreement was executed according to law, none of the alleged witnesses to the signing were called to testify at the hearing. Moreover, appellant provided no evidence to rebut the presumption that Grennan purposely revoked the agreement prior to his death. While appellant testified that he saw the agreement in Grennan's personal files sixty days before his death, appellant provided no evidence that the agreement remained unrevoked, or that the agreement was lost after his father's death.
It is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Heights (2000), 88 Ohio St.3d 7, 10; Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226. In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." State ex rel. Celebrezze v. EnvironmentalEnterprises, Inc. (1990), 53 Ohio St.3d 147, 154.
Here, the probate court was obviously in the best position to weigh the evidence after hearing the testimony and judging the credibility of both appellant and appellee. This court will not substitute our judgment in place of the probate court's in this matter because there was some competent, credible evidence to support the court's decision.
Hence, we conclude that the probate court did not err in finding that appellant failed to establish by clear and convincing evidence that the original agreement was lost, spoliated, or destroyed after Grennan's death or before Grennan's death, but without his knowledge. Thus, there is no need to consider whether or not the agreement made a testamentary disposition of property.
Even if we were to assume for the sake of argument that appellant is correct, appellant has failed to demonstrate how he was prejudiced by the probate court's finding that the agreement failed to make a testamentary disposition of property. Without a finding that the original had been lost, spoliated, or destroyed, it is immaterial whether the agreement made a testamentary disposition. It would be, therefore, harmless error at worst. Laituri v. Nero (2000), 138 Ohio App.3d 348;
Civ.R. 61.[3] Appellant's sole assignment of error is not well taken.
Accordingly, the judgment of the probate court is affirmed.
O'NEILL, P.J., FORD, J., concur.
[1] Appellee and Grennan had married in 1961. Both had been married once before and each had three children from their prior marriages.
[2] The term "will" includes "codicils to wills admitted to probate, lost, spoliated, or destroyed wills, and instruments admitted to probate under section 2107.081 of the Revised Code, but `will' does not includeinter vivos trusts or other instruments that have not been admitted to probate." (Emphasis added.) R.C. 2107.01.
[3] Civ.R. 61 provides in part:
 "No error * * * or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for * * * vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. * * *"